## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| DILLONGER JOHN MAJORS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:22-cv-01182-SEP |
| | ) | |
| KENNETH BOYER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff Dillonger John Majors's motion for an emergency protective order against all Department of Corrections employees working at the Potosi Correctional Center (PCC).  Doc. [25].  The motion also requests an emergency preliminary injunction releasing Plaintiff from administrative segregation.  For the reasons set forth below, the motion is denied.

### BACKGROUND

The facts, as alleged by Plaintiff, are as follows:  On May 19, 2023, Plaintiff "took a 7-man cell extraction team," because his "case worker was throwing away [his] grievances, [his] qualified legal claims and refusing to submit [his] green checks for [his Section] 1983 civil suit."  Doc. [25] at 1.  "They" claim Plaintiff  attempted to stab a sergeant on the cell extraction team who is married to a medical technician at PCC.  *Id.*

One week later, offender Howard Lewis overheard staff in the Transitional Care Unit (TCU) conspiring to poison Plaintiff with his medications, but before Lewis could tell Plaintiff, Plaintiff had a seizure and was taken to the medical unit.  He was assessed by medical professionals and returned to his cell.  *Id.* at 2.  The next day, after medication pass, Plaintiff had another seizure.  *Id.*  He was admitted to the transitional care unit (TCU) for closer observation. *Id.*  That night in the TCU, he had a third seizure in which he fell and struck his head.  *Id.*  He asked "Nurse Jennifer" to conduct the concussion protocol and perform a full assessment, but she refused.  *Id.*

After a shower, Plaintiff was returned to a cell in the TCU.  *Id.*  While he was in restraints in his cell, Lieutenant Charles Carver allegedly lunged at him, grabbed his throat, and slammed him into a wall, striking his head.  *Id.*  Carver then slammed him to the ground, jumped on him, took all of his property, and left Plaintiff handcuffed to the cell door with a tether.  *Id.*

Eventually, Plaintiff was moved out of the TCU to a suicide cell covered in rubber, called the "rubber room." *Id.* While in the rubber room, he had another seizure. *Id.* The officers gave him Ativan and transferred him to the hospital. *Id.* After his return from the hospital, he was again placed in the rubber room. *Id.* at 3. The next morning, after medication pass, Plaintiff had another seizure. *Id.* While he was unconscious, Captain Brown and Major Ryan Since sprayed him in the face with mace. *Id.* He continued to convulse and awoke in the emergency room in the medical unit. *Id.* When he was "semi-conscious," Dr. Don James "began flicking [him on] the nose stating 'wake up stupid, the gig is up.'" *Id.* Plaintiff became angry and threatened to take a cell extraction team. *Id.* Captain Brown and Major Since took Plaintiff out of his "4-point restraints" and placed him in a device called "the wrap," which is another type of restraint. *Id.*

When he returned to his cell, Plaintiff declared he was suicidal, and several officers came his cell with riot shields but no protective gear. *Id.* at 3-4. Plaintiff implies that if he had attempted to stab an officer on the cell extraction team on May 19, 2023, the officers responding to his cell would have worn protective gear. *Id.* at 4. He infers that "they <u>WANTED</u> [him] to come out [and] assault staff so they could call for back-up and retaliate against [him] by seriously injuring or killing [him] as they said they would do in [the TCU]." *Id.* Plaintiff claims he was then placed on suicide watch, whereupon Lewis related what he had overheard. *Id.*

At the time of the motion, Plaintiff had been released from suicide watch but was in administrative segregation and on limited property. He had reportedly stopped taking all of his medications and had stopped having seizures. *Id.* at 5. Based on the seizures he suffered while taking his medications; offender Lewis's report that TCU staff conspired to poison Plaintiff; and the fact that the person Plaintiff allegedly tried to stab is married to a medical technician, Plaintiff believes that PCC employees are conspiring to kill him, and he asks the Court for an emergency protective order against "<u>ANY AND ALL</u> D.O.C. employees" and "an emergency preliminary injunction to be released from administrative segregation." *Id.* He also asks for another form civil rights complaint so he can file a new case arising out of these facts. *Id.*

### DISCUSSION

Although Plaintiff requests "an emergency protective order," his motion is the functional equivalent of a motion under Federal Rule of Civil Procedure 65(b)(1), which governs temporary restraining orders issued without notice to the adverse party. Under Rule 65(b)(1), the Court may issue a temporary restraining order "only if . . . specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the

movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).  When considering whether to grant such relief, the Court evaluates:  "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that movant will succeed on the merits; and (4) the public interest."  *Dataphase Sys., Inc v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981); *see also Brooks v. Roy*, 881 F. Supp. 2d 1034, 1049 n.6 (D. Minn. 2012) ("Courts in the Eighth Circuit apply the same standards to a request for preliminary injunction and temporary restraining order." (citing *S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989))).

The Eighth Circuit has cautioned that "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration."  *Goff v Harper*, 60 F.3d 518, 520-21 (8th Cir. 1995) (citing *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)).  For an injunction to issue in the prison context, therefore, "a right must be violated," and a court must determine that "a cognizable danger of future violation exists and that danger must be more than a mere possibility."  *Id.*  The Eighth Circuit has noted that courts "should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate."  *Id.*

As of the date of Plaintiff's filing, Plaintiff is housed in administrative segregation.  He is no longer taking the medication that allegedly caused his seizures.  Plaintiff's allegations that the PCC employees are attempting to kill him are speculative and they do not support a finding that Plaintiff is currently suffering irreparable harm.  Therefore, the first *Dataphase* factor, "the threat of irreparable harm to the movant," disfavors an injunction.  *Dataphase Sys., Inc.*, 640 F.2d at 113. Meanwhile, the relief Plaintiff seeks would inflict substantial harm upon the PCC and its employees, in that an order restraining them from taking any action in relation to Plaintiff would seriously hinder the functionality of the facility.  Therefore, the balance of harms also weighs against injunctive relief.  And Plaintiff also has not shown that he can succeed on the merits of his claims.  To begin with, this civil rights lawsuit alleges unlawful use of force by Defendants Kenneth Boyer and Benjamin Barbier, neither of whom is named in Plaintiff's motion. Defendant Barbier no longer works for the Missouri Department of Corrections.  And the events alleged in Plaintiff's motion are separate and distinct from the events at issue in this case, which occurred more than a year earlier on March 15, 2022.  *See* Doc. [1].

Plaintiff has not shown that any of the *Dataphase* factors favors emergency relief, and the Court finds that at least three of the four—including the threat of immediate and irreparable injury, which is necessary for relief under Rule 65(b)(1)—weigh against it.  Therefore, the Court denies Plaintiff's motion for a temporary restraining order and preliminary injunction.  Doc. [25]. The Court orders the Clerk of Court to mail to Plaintiff another prisoner civil rights complaint form in case Plaintiff wishes to pursue a civil action arising out of the facts alleged in his motion.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for a temporary restraining order and preliminary injunction, Doc. [25], is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to Plaintiff a prisoner civil rights complaint form.

Dated this 9th day of June, 2023.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

4